UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**CARMEN MILAGROS NEGRON**
**ALICEA, et als.,**
Plaintiffs

CIVIL NO. 03-1707(DRD)

v.

**ONDEO DE PUERTO RICO, et als.,**
Defendants

## OPINION AND ORDER

The instant case is a Civil Rights action brought forth by Carmen Milagros Negron Alicea on her behalf and on behalf of Esteban Gabriel Quinones Negron (a minor) ("plaintiff") pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, Sections 701 *et seq.* and 703(a)(1) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and 2000e-2(a)(1), 29 P.R. Laws Ann. § 146 *et seq.* and 185a, double damages pursuant to 29 P.R. Laws Ann. § 155j, and 29 P.R. Laws Ann. § 5141.[1]

Now, pending before the Court is *Defendant Ondeo de Puerto Rico's Motion for Summary Judgment*. (Docket No. 78), and *American International Insurance Company's Motion fro Summary Judgment* (Docket No. 80). Although plaintiff did file an opposition to said motions,

---

[1] In sum, plaintiff is seeking several remedies, to wit: (1) declaratory judgment stating that the acts complained of in the complaint are in violation of the Age Discrimination in Employment Act ("ADEA"), the Constitution and Laws of the United States of America, and the Commonwealth of Puerto Rico; (2) preliminary and permanent injunction enjoining Ondeo de Puerto Rico ("defendant"), its agents, successors, employees, attorneys, and those acting in concert with them from: a) engaging in practices of age, sex, and/or national origin discrimination against plaintiff, b) taking any retaliatory measures against plaintiff for her complaint of age, sex, and national origin discrimination, and c) disseminating any negative information concerning her job performance; (3) compensatory damages for no less than One Million Dollars ($1,000,000.00); (4) compensatory damages for the minor in the amount of Five Hundred Thousand Dollars ($500,000.00); (5) liquidated damages for One Hundred Thousand Dollars ($100,000.00); (6) punitive damages for Three Hundred Thousand Dollars ($300,000.00); (7) back, and front pay and related benefits and interest; (8) costs of litigation with attorney's fees; (9) prejudgment interests; and (10) all other relief as the Court may deem just and proper.

through an order dated September 8, 2005, the Court struck said opposition from the record for having been filed in an untimely matter. (Docket No. 111).

## I. SUMMARY JUDGMENT STANDARD

The framework of Fed.R.Civ.P. 56 provides that it is appropriate to enter summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). *See* Celotex Corp v. Catrett, 477 U.S. 317, 324-25, 106 S.Ct. 2548, 2553-54 (1986); Abbadessa v. Moore Business Forms, Inc., 987 F.2d 18, 22 (1st Cir. 1993). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," *and* that he is "entitled to judgment as a matter of law." Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997). When the moving party asserts that the competent evidence clearly demonstrates that it is entitled to judgment and after the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortes-Irizarry v. Corporacion Insular, 111 F.3d 184, 187 (1st Cir. 1997).

To determine whether these criteria have been met, a court must pierce the boilerplate of the pleadings and carefully review the parties' submissions to ascertain whether they reveal a trial worthy issue as to any material fact. *See* Perez v. Volvo Car Corporation, 247 F.3d 303, 310 (1st Cir. 2001); Grant's Dairy-Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res., 232 F.3d 8, 14 (1st Cir. 2000); Cortes-Irizarry v. Corporacion Insular, 111 F.3d 184, at 187; McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995) (the Court must look behind the facade of the pleadings

alleged in the complaint, in this case the *Third Amended Complaint* (Docket No. 59) and examine the parties proof in order to determine whether a trial is required.).  Furthermore, a fact is "material" if it potentially could affect the suit's outcome.  *See* Id.  An issue concerning such a fact is "genuine" if a reasonable fact finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor.  *See* Id.  The Court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 2110 (2000).

This is so, because credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.  *See* Reeves, id.  There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood[.]" Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987).  "The Court should give credence to the evidence favoring the non-movant as well as the evidence supporting the moving party that is contradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses."  Id.  Issues of motive are usually not appropriate when in summary judgment for these are questions better suited to be resolved by the trier of facts.  *See* Pullman-Standard v. Swint, 456 U.S. 273, 288-90, 102 S.Ct. 1781, 1790-91 (1982); Lipsett v. University of P.R., 864 F.2d 881, 895 (1st Cir. 1988); Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 (1st Cir. 2000); Stoutt v. Banco Popular de P.R., 158 F.Supp.2d 167, 172 (D.P.R. 2001); *see also* Ayala Gerena v. Bristoy Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996); Mulero Rodriguez v. Ponte Inc., 98 F.3d 670, 677 (1st Cir. 1996).

An absence of evidence on a critical issue weighs against the party –be it the movant or the non-movant– who would bear the burden of proof on that issue at trial. *See* Perez v. Volvo Corporation, 247 F. 3d at 310; *see also* Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35-36 (1st Cir. 1998); Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990). Accordingly, "speculation and surmise, even when coupled with effervescent optimism that something definite will materialize further down the line, are impuissant on the face of a properly documented summary judgment motion." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d at 95.

At the summary judgment stage, the trial court examines the entire record "in the light most flattering to the non-movant and indulges all reasonable inferences in that party's favor. Only if the record, viewed in the manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Company v. Hayes, 116 F.3d 957 at 959-60 (1st Cir. 1997). In other words, the court must construe the record and all reasonable inferences from it in favor of the non-movant (the party opposing the summary judgment motion). *See* Suarez v. Pueblo Int'l, Inc. 229 F.3d 49, 53 (1st Cir. 2000); Cortes-Irizarry, 111 F. 3d at 187; *see also* United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Moreover, "[i]f the adverse party does not [file an opposition], summary judgment, **if appropriate**, shall be entered against the adverse party." Fed.R.Civ.P. 56(e) (emphasis added). The First Circuit Court of Appeals has made clear that failure to timely oppose a motion for summary judgment, does not, in itself, justify entry of summary judgment against the party; therefore, a District Court is nonetheless "obliged to consider the motion on the merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate." Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991); *see also* Lopez v. Corporacion Azucarera de Puerto Rico, 938 F.2d

1510, 1517 (1st Cir. 1991) (holding that before granting an unopposed summary judgment motion, the court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law).  In the case of failure to oppose a motion for summary judgment, the consequence "is that the party may lose the right to file an opposition." Mullen v. St. Paul Fire & Marine Ins. Co., 972 F.2d 446, 451-52 (1st Cir. 1991) (discussing unopposed motion for summary judgment).  Notwithstanding, **a party that fails to oppose a motion for summary judgment, does so at its own risk and peril**.  *See e.g.* Corrada Betances v. Sea-Land Services, Inc., 248 F.3d 40, 43 (1st Cir. 2001); Herbert v. Wicklund, 744 F.2d 218, 233 (1st Cir. 1994).  However, even though that there is no opposition on file to a summary judgement, the Court must entertain the motion on the merits and may not grant the same as a sanction to the party who fails to oppose.  *See* De la Vega v. San Juan Star, 377 F. 3d 111(1st Cir., 2004).

## II.  FACTUAL & PROCEDURAL  BACKGROUND

The Court must analyze the factual scenario in this case construing the facts, the record, and all reasonable inferences in the light most favorable to the party opposing summary judgment. *See* Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000) ("...the Court must draw all reasonable inferences in favor of the nonmoving party..."); *see also*, Leahy v. Raytheon Company, 315 F.3d 11, 17 (2002) ("...the court must take the record 'in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor'.") (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990); *see also*, Plumley v. Southern Container Inc., 303 F.3d 364, 368-69 (1st Cir. 2002)).

Plaintiff applied for the "Director of Human Resources" position at Ondeo on June 17, 2002.  She was, nevertheless, hired as Communications Director.  On June 22, 2002, Ondeo then

extended to her a "Probationary employment contract". According to this contract, plaintiff would be subjected to a ninety (90) day probationary period at a salary of Seventy Five Thousand Dollars ($75,000.00). Plaintiff was Forty Five (45) years old at the time of her probationary recruitment. She signed the contract on that same date and began participating in the operations of the company on June 25, 2002. However, plaintiff officially began working for the company on July 1st, 2002. Consequently, her probationary period was due to conclude on September 28, 2002.

According to plaintiff herself, **only seven days** after having officially accepted employment with Ondeo on July 8, 2002, she was verbally informed by Mr. Guy Canavy, Ondeo's president, and the person in charge of having approved plaintiff's recruitment, that she was being terminated from her employment.[2] Upon plaintiff's request, she was allowed to remain at work until July 31, 2002. Plaintiff was terminated, as per her own answers to interrogatories and a letter to Mr. Canavy recapitulating the conversation wherein she was terminated,[3] because of her poor work performance and her inability to project the public image of Ondeo as desired and requested by the company. She also restated as part of the reasons provided to her for her termination that she represented the previous company's interests (her previous employer, Compania de Aguas) and that the government was quite irked by Compania de Aguas. Once she was terminated, Ms. Lynnette Teissonnier, a female born in Puerto Rico only two (2) years younger than plaintiff, was appointed to plaintiff's position of Communications Director of Ondeo. Ms. Teissonnier,

---

[2] Moreover, the *same actor inference* doctrine presupposes that "[i]n cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 847 (1st Cir. 1993) (*quoting* Proud v. Stone, 945 F.2d 796 (4th Cir. 1991)).

[3] It must be noted that in said letter, plaintiff did not make any assertions that might be construed as allegations of discrimination against her.

moreover, earned a higher salary of Eighty Thousand Dollars ($80,000.00).

On January 23, 2003 – **one hundred ninety nine (199) days** after she was informed by Mr. Canavy of her termination – plaintiff filed a charge of discrimination before the EEOC. Therein she only alleged discrimination because of age. Subsequently, on May 15, 2003 – **three hundred twenty one (321) days** after having been informed of her termination – plaintiff filed a second charge of discrimination before the EEOC. This time, she alleged she was discriminated against because of sex and national origin. On that same date, plaintiff requested from the EEOC a right to sue letter in order to be able to file the instant claim. There is nothing in the record that reflects that the EEOC adjudicated either of the charges or issued a right to sue letter to plaintiff.

### III. ANALYSIS

In the instant case, defendants seek the Court dismisses all of plaintiff's claims provided that she has failed to adequately and timely exhaust administrative remedies before filing the claim herein, and, thus, unquestionably failed to comply with the jurisdictional impositions of Title VII and the ADEA. Defendants aver that by having filed the first administrative charge one hundred ninety nine days after having been informed on July 8, 2002 of her termination, plaintiff failed to comply with the clearly proscribed time limits set forth in the statute, thus, instantly depriving this Court of federal jurisdiction due to non-compliance with required exhaustion of remedies. Defendants raise the same argument regarding plaintiff's second filing of administrative charges which were filed three hundred twenty one days after having been notified of her termination. The Court agrees.

The ADEA and Title VII mandate "compliance with the administrative procedures specified in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e." Bonilla v. Muebles J.J. Alvarez,

Inc., 194 F.3d 275, 277 (1st Cir. 1999). "[S]uch compliance must occur before a federal court may entertain a suit that seeks recovery for an alleged violation [under the ADEA and Title VII]." Id. In fact, 42 U.S.C. § 2000e-5(e), in pertinent part states that a charge shall be filed with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred," or within three hundred days if "the person aggrieved has initially institutionalized proceedings with [an authorized] State or local agency" or "within thirty days after receiving notice that the State or local agency has terminated the proceedings with a State or local agency, whichever is earlier."

It is undisputed that plaintiff's filings at the EEOC were untimely. Under both, the ADEA and Title VII, she was required to file charges with the EEOC within one hundred and eighty (180) days after the alleged unlawful employment practice. *See* Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d at 277. Furthermore, it has been unquestionably recognized in the federal forum that the time limitation period in an employment discrimination case begins to accrue at the time of the discriminatory act itself rather than the time wherein its consequences take effect. Moreover, continuity of employment, as it occurred in the instant case, is insufficient to prolong the life of this type of cause of action. *See generally* Del. State College v. Ricks, 449 U.S. 250, 257, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *see also* Rossiter v. Potter, 357 F.3d 26, 35 (1st Cir. 2004); Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 750 (1st Cir. 1994). In the instant case, in sum, the only alleged discrimination occurred – and the filing limitations therefore commenced – at the time Mr. Guy Canavy verbally informed plaintiff of his decision as to employment termination. That is to say, the one hundred and eighty (180) day limitation period began to accrue on July 8, 2002. Accordingly, the most generous calculation of the trigger date renders the filings with the EEOC

nineteen (19) and one hundred forty one (141) days late. Therefore, plaintiffs ADEA and Title VII claims are foreclosed due to plaintiff's failure to timely exhaust statutory administrative remedies.

## IV.  CONCLUSION

Accordingly, and for the reasons aforementioned, the Court **GRANTS** defendants motions for summary judgment (Docket Nos. 78, and 80) and **DISMISSES WITH PREJUDICE** all plaintiff's federal claims.  Since the Court dismissed plaintiff's federal action, pursuant to 28 U.S.C. § 1367 (c)(3) as interpreted in González de Blasini v. Family Department, 377 F.3d 81, 89 (1st Cir. 2004); Claudio Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 105 (1st Cir. 2004); and Rodríguez v. Doral Mortgage, 57 F.3d 1168, 1177 (1st Cir, 1995) all claims pursuant to state law are hereby **DISMISSED WITHOUT PREJUDICE**.

Judgment will be issued accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of September of 2005

s/ Daniel R. Dominguez<br>
**DANIEL R. DOMINGUEZ**<br>
**U.S. DISTRICT JUDGE**